**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

TEXAS TRIBUNE, MANO AMIGA,
CALDWELL/HAYS EXAMINER,

Plaintiffs,

v.

CALDWELL COUNTY, TEXAS, *et al.*,

Defendants.

Civil Action No. 1:23-cv-910-RP

**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Camilla Hsu (24130207)
Texas Fair Defense Project
314 E. Highland Mall Blvd., Suite 204
Austin, TX  78752
(512) 637-5220 x111
chsu@fairdefense.org

*Counsel for Plaintiffs Mano Amiga and
Caldwell/Hays Examiner*

Julie A. Ford (07240500)
George Brothers Kincaid & Horton, LLP
114 W. 7th Street, Suite 1100
Austin, Texas 78701
(512) 495-1448
Jford@gbkh.com

*Counsel for Plaintiff Texas Tribune*

Scott Wilkens (*Pro Hac Vice*)
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
scott.wilkens@knightcolumbia.org

*Counsel for Plaintiffs*

## Table of Contents

Table of Authorities ................................................................................................ ii

Introduction .......................................................................................................... 1

Preliminary Statement .......................................................................................... 1

Background ........................................................................................................... 3

    I.      Magistration in Caldwell County .............................................................. 3

    II.     Harms suffered by Plaintiffs due to the closure of magistration ................. 5

    III.    Plaintiffs' efforts to access magistration and Defendants' policy banning
          access ...................................................................................................... 6

Argument .............................................................................................................. 7

    I.      Preliminary injunction standard. ............................................................... 7

    II.     Plaintiffs are likely to succeed on the merits. ............................................ 8

          A.     The press and public have a presumptive First Amendment right of
               access to bail hearings. ................................................................... 8

          B.     Defendants cannot overcome the presumptive right of access to bail
               hearings. ...................................................................................... 13

          C.     Defendants have failed to provide the due process required to protect
               the First Amendment public right of access. ................................... 14

    III.    Plaintiffs will continue to be irreparably harmed absent a preliminary
          injunction. ................................................................................................ 15

    IV.    The balance of hardships and the public interest strongly favor preliminary
          injunctive relief. ....................................................................................... 16

    V.     The Court should waive the security requirement. ...................................... 17

Conclusion ........................................................................................................... 18

# Table of Authorities

## Cases

*Barker v. Wingo*, 407 U.S. 514 (1972) ........................................................................ 11

*Bearden v. Georgia*, 461 U.S. 660 (1983) .................................................................... 11

*Booth v. Galveston Cnty.*, No. 3:18-CV-00104, 2019 WL 4305457 (S.D. Tex.
    Sept. 11, 2019) ....................................................................................................... 18

*City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084 (5th Cir.
    Unit B 1981) ........................................................................................................... 18

*Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627 (5th Cir. 2023) ........... 16

*Daily Press, LLC v. Commonwealth*, 878 S.E.2d 390 (Va. 2022) .................... 9, 10, 12

*El Vocero de P.R. v. Puerto Rico*, 508 U.S. 147 (1993) ................................................ 8

*Ex parte Gomez*, 624 S.W.3d 573 (Tex. Crim. App. 2021) ........................................... 3

*Foley v. Commonwealth*, 709 N.E.2d 794 (Mass. 1999) ............................................. 17

*Franciscan All., Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022) ................................... 15

*Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596 (1982) ............. passim

*Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211 (2d Cir. 2021) ......................... 16

*In re Globe Newspaper Co.*, 729 F.2d 47 (1st Cir. 1984) ............................. 9, 10, 11, 12

*In re Hearst Newspapers, L.L.C.*, 641 F.3d 168 (5th Cir. 2011) ....................... 8, 13, 15

*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624 (5th Cir. 1996) ........................................ 17

*Lafler v. Cooper*, 566 U.S. 156 (2012) ...................................................................... 12

*Lilly v. State*, 365 S.W.3d 321 (Tex. Crim. App. 2012) .............................................. 17

*Nken v. Holder*, 556 U.S. 418 (2009) ......................................................................... 16

*Opulent Life Church v. City of Holly Springs*, 697 F.3d 279 (5th Cir. 2012) ........... 7, 16

*Phila. Bail Fund v. Arraignment Ct. Magistrate Judges*, 440 F. Supp. 3d 415
    (E.D. Pa. 2020) ................................................................................................ 11, 13

*Presley v. Georgia*, 558 U.S. 209 (2010) ................................................................... 17

*Press-Enterprise Co. v. Superior Ct. of Cal.*, 464 U.S. 501 (1984)..........................................8, 13

*Press-Enterprise Co. v. Superior Ct. of Cal.*, 478 U.S. 1 (1986)..............................................8, 13

*Pursuing Am.'s Greatness v. Fed. Election Comm'n,* 831 F.3d 500 (D.C. Cir. 2016) ...................................................................................................................16

*Purvis v. State*, 708 S.E.2d 283 (Ga. 2011) ............................................................................17

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)...............................................8, 13

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020)..............................................15

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018)..........................................................11

*Rothgery v. Gillespie County*, 554 U.S. 191 (2008) ...........................................................1, 4, 10

*Schultz v. Medina Valley Indep. Sch. Dist.*, No. SA-11-CA-422-FB, 2011 WL 13234770 (W.D. Tex. June 1, 2011).................................................................18

*Seattle Times Co. v. United States Dist. Ct. for W. Dist. of Wash.*, 845 F.2d 1513 (9th Cir. 1988)...................................................................................9, 10, 11, 12

*State v. Williams*, 459 A.2d 641 (N.J. 1983).......................................................................9, 12, 16

*United States v. Ahsani*, 76 F.4th 441 (5th Cir. 2023) .........................................................14, 15

*United States v. Chagra*, 701 F.2d 354 (5th Cir. 1983) ..............................................9, 10, 11, 12

*United States v. Edwards*, 430 A.2d 1321 (D.C. 1981) .............................................................9, 12

*United States v. Edwards*, 823 F.2d 111 (5th Cir. 1987) ...............................................................10

*United States v. Salerno*, 481 U.S. 739 (1987) ...........................................................................11

*Veasey v. Abbott*, 870 F.3d 387 (5th Cir. 2017)..........................................................................16

*Waller v. Georgia*, 467 U.S. 39 (1984)......................................................................................17

**Statutes**

Mich. Comp. Laws § 767.37a(3) (1994).....................................................................................12

Nev. Rev. Stat. § 178.4849 (2021)..............................................................................................12

Tex. Code Crim. P., Art. 15.17(a)...........................................................................................3, 4, 5

Tex. Code Crim. P., Art. 17.028(a).................................................................................................3

Tex. Code Crim. P., Art. 17.15 .................................................................................... 3, 11

Tex. Loc. Gov't. Code § 351.041(a) ............................................................................. 5

Wis. Stat. § 967.08(1) (1988) ....................................................................................... 12

**Other Authorities**

1 Wayne R. LaFave et al., *Criminal Procedure* §1.4(g) (4th ed. 2022) ......................................... 4

*Caldwell County Court at Law Judge*, Caldwell County Texas,
    https://perma.cc/SU5V-AXWP (last visited Sept. 12, 2023) .................................... 4

Caldwell County, Tex., Caldwell District Court and County Court Indigent
    Defense Plan art. I (2021), https://perma.cc/MRN4-HUEW .................................. 4

Clark Neily, *Jury Empowerment as an Antidote to Coercive Plea Bargaining*, 31
    Fed. Sent. R. 284 (2019) ........................................................................................ 12

*Justice of Peace Courts of Caldwell County*, Caldwell County Texas,
    https://perma.cc/HJS5-DU3L (last visited Sept. 12, 2023) .................................... 4

*Magistrate Court*, County of Galveston, https://perma.cc/H8JB-XYPZ (last
    visited Sept. 13, 2023) ........................................................................................... 5

Paul Heaton et al., *The Downstream Consequences of Misdemeanor Pretrial
    Detention*, 69 Stan. L. Rev. 711 (2017) ................................................................ 12

Tex. Att'y. Gen. Op. MW-78  (1979), https://perma.cc/2NBM-2S59 ............................... 4

Texas Justice Court Training Center, Magistrate Deskbook (3d ed. 2022),
    https://docs.gato.txst.edu/226904/Magistration%20Deskbook%20-
    %20Third%20Edition.pdf ....................................................................................... 4

Timothy R. Schnacke et al., *Pretrial Justice Inst.*, *The History of Bail and Pretrial
    Release* (2010), https://perma.cc/22VF-R6FY ..................................................... 10

**Rules**

Del. R. Crim. P. J.P. Cts. R. 10(b)(1) (1998) ................................................................ 12

Minn. R. Crim. P. 1.05 (2007) ....................................................................................... 12

N.H. R. Crim. P. R. 10 (2015) ....................................................................................... 12

N.M. R. Crim. P. Magis. Ct. R. 6-109 (2015) ............................................................... 12

Tenn. R. Crim. P. R. 43(e)(2) (2006) ............................................................................ 12

**Introduction**

Pursuant to Federal Rule of Civil Procedure 65 and Local Civil Rule 65, Plaintiffs respectfully move for a preliminary injunction to remedy Defendants' ongoing violations of Plaintiffs' First Amendment right of access to bail hearings in Caldwell County, Texas. Plaintiffs seek a declaration that Defendants' policy of banning the press and public from attending bail hearings is unconstitutional, and an injunction requiring Defendants to presumptively open all such hearings to the press and public and prohibiting them from closing a bail hearing unless they first comply with all applicable constitutional requirements.[1]

**Preliminary Statement**

The Plaintiffs—state and local publications and a criminal justice organization—seek a preliminary injunction to prevent further violations of their First Amendment right of access to bail hearings in Caldwell County, Texas. This type of hearing, which is conducted by county magistrates across Texas and is commonly referred to as "magistration," "combines the Fourth Amendment's required probable-cause determination with the setting of bail, and is the point at which the arrestee is formally apprised of the accusation against him." *Rothgery v. Gillespie County*, 554 U.S. 191, 195 (2008) (footnote omitted). As the "first formal proceeding against an accused," "where he learns the charge against him and his liberty is subject to restriction," magistration "marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." *Id.* at 203, 213.

Despite the critical importance of these bail hearings, Defendants bar the press and public from attending them. Caldwell County's Magistrates have adopted a policy of categorically closing

---

[1] Pursuant to Local Rule CV-7(g), counsel for Plaintiffs conferred with counsel for Defendants, who represented that Defendants oppose the motion for a preliminary injunction because it exceeds what is constitutionally and statutorily authorized.

all magistration proceedings to the press and public. In addition, they have chosen to conduct magistration inside the County Jail and in a room that could not accommodate members of the press or public even if they were permitted to attend. In accordance with the Magistrates' blanket closure policy, the Sheriff—as keeper of the County Jail—has adopted a policy of prohibiting members of the press and public from entering the jail for the purpose of attending magistration.

Plaintiffs are likely to succeed on the merits because the blanket closure of magistration proceedings is plainly unconstitutional. The press and public have a broad First Amendment right of access to judicial proceedings that can be overcome only in exceptional circumstances. This right is fundamental to "our republican system of self-government," because it ensures that the "discussion of governmental affairs" is an "informed" one, and "permits the public to participate in and serve as a check upon the judicial process." *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 604–06 (1982). The Supreme Court has held that this right extends to pretrial proceedings, and every federal and state appellate court to address the question—including the Fifth Circuit—has expressly held that it extends to bail hearings.

As these courts have recognized, bail hearings are integral to our judicial system. They implicate numerous constitutional protections, determine whether the presumptively innocent will be deprived of their liberty pending trial, involve the consideration of weighty questions such as community safety and the risk of flight, and in most cases are the accused's only hearing prior to entering a plea. As a result, public access to bail hearings serves the same societal interests as public access to criminal trials. In addition to promoting the informed discussion of governmental affairs and allowing the public to serve as a check on the judicial process, public access also fosters the appearance of fairness, which in turn heightens public respect for the judicial process.

The other preliminary injunction factors also weigh heavily in Plaintiffs' favor. In the absence of preliminary relief, the press and public, including Plaintiffs, will be prevented from exercising their First Amendment right of access to judicial proceedings each time the Caldwell County Magistrates conduct magistration behind closed doors. The deprivation of First Amendment rights, even for short periods of time, causes irreparable injury. Preliminary relief will not only prevent irreparable injury to Plaintiffs, but will also serve the public interest and benefit, rather than harm, Defendants. The openness of magistration will enhance the quality of, and promote public confidence in, the County's judicial proceedings.

## Background

### I.      Magistration in Caldwell County

State law requires that arrestees in Caldwell County and across Texas be brought before a county magistrate within 48 hours of arrest for an initial appearance which, as noted above, is commonly referred to as "magistration." Tex. Code Crim. P., Art. 15.17(a). This first appearance serves many functions, the most important of which is to set bail. *Id.* Magistrates must make individualized determinations regarding the bail amount and conditions based on "all circumstances," including a number of enumerated factors, such as the nature of the alleged offense, the accused's ability to make bail, the risk of flight, and community safety. Tex. Code Crim. P., Arts. 17.15, 17.028(a). "Other relevant factors include the defendant's employment history, family ties, length of residency, criminal history, previous bond compliance, other outstanding bonds, and aggravating facts of the charged offense." *Ex parte Gomez*, 624 S.W.3d 573, 576 (Tex. Crim. App. 2021). In addition to setting bail, magistrates must inform arrestees of the accusations against them, determine probable cause, advise arrestees of their rights (including the right to counsel), inform them how to request the appointment of counsel, and ensure they have

reasonable assistance in making the request. Tex. Code Crim. P., Art. 15.17(a); *see also Rothgery*, 554 U.S. at 195, 213.[2]

In Caldwell County, the Sheriff, Defendant Mike Lane, is responsible for ensuring that arrestees are taken before a magistrate within 48 hours of arrest.[3] Caldwell County has five magistrates ("Magistrates")—Defendant Trey Hicks, the County Court at Law Judge, and Defendants Matt Kiely, Shanna Conley, Anita DeLeon, and Yvette Mireles, the County's Justices of the Peace.[4] They conduct magistration on a rotating basis inside the Caldwell County Jail, where the arrestees are detained.[5] TFDP Decl. Ex. 3. State law does not specify where magistration must take place and instead leaves that decision to magistrates. *See* Tex. Code Crim. P., Art. 15.17(a) (providing that the officer who makes the arrest or who has custody of the arrestee, "take [him] or have him taken before [a county] magistrate," i.e., to the place where the magistrate chooses to carry out his or her duties).[6] Although the Magistrates can participate in person, they generally do

---

[2] In other jurisdictions, an initial appearance is also known as an "initial presentment," "arraignment on the complaint," or "preliminary arraignment." 1 Wayne R. LaFave et al., *Criminal Procedure* §1.4(g) (4th ed. 2022) (internal quotation marks omitted).

[3] Caldwell County, Tex., Caldwell District Court and County Court Indigent Defense Plan art. I (2021), https://perma.cc/MRN4-HUEW; *see also* Tex. Code Crim. P., Art. 15.17(a).

[4] *Caldwell County Court at Law Judge*, Caldwell County Texas, https://perma.cc/SU5V-AXWP (last visited Sept. 12, 2023); *Justice of Peace Courts of Caldwell County*, Caldwell County Texas, https://perma.cc/HJS5-DU3L (last visited Sept. 12, 2023).

[5] The Plaintiffs have submitted declarations from: (1) The Texas Tribune; (2) The Caldwell/Hays Examiner; (3) Mano Amiga; (4) The Texas Fair Defense Project; and (5) Scott Wilkens, Senior Counsel at the Knight First Amendment Institute at Columbia University and counsel to Plaintiffs.

[6] Tex. Att'y. Gen. Op. MW-78 (1979), https://perma.cc/2NBM-2S59 (stating that "[t]here is no provision in article 15.17 as to where the warnings [given during magistration] must be issued," and that "[p]resumably [they] may be [issued] anywhere in the county where the magistrate may be found," given that the magistrate's "jurisdiction is county wide"); Texas Justice Court Training Center, Magistrate Deskbook at 4 (3d ed. 2022), https://docs.gato.txst.edu/226904/Magistration%20Deskbook%20-%20Third%20Edition.pdf ("[N]o statute dictates where an Article 15.17 hearing must occur. In fact, the Code of Criminal

so via videoconference. Caldwell/Hays Exam'r Decl. ¶ 3; *see also* Tex. Code Crim. P., Art. 15.17(a) ("The arrested person may be taken before the magistrate in person or . . . by means of a videoconference."). Sheriff Lane is responsible for ensuring that jail personnel take arrestees to the room inside the jail that is designated for magistration. *See* Tex. Loc. Gov't. Code § 351.041(a) (providing that "[t]he sheriff of each county is the keeper of the county jail").

The Caldwell County Magistrates have adopted and maintain a policy banning the press and public from attending magistration, and, accordingly, Sheriff Lane has put in place a policy prohibiting the press and public from entering the jail for that purpose. Caldwell/Hays Exam'r Decl. ¶ 6; *see also* Tex. Loc. Gov't. Code § 351.041(a). As a result, only the Magistrate and accused are present.[7] TFDP Decl. Ex. 3. Defendants do not provide the press or public with notice of when magistration proceedings will occur, the names of the arrestees to be magistrated, or an opportunity to be heard prior to closure of any magistration proceeding. TFDP Decl. Ex. 2.

## II.   Harms suffered by Plaintiffs due to the closure of magistration

Defendants' policy of closing all magistration proceedings inhibits Plaintiffs from pursuing their organizational goals. Access to criminal proceedings, including magistration, is fundamental to The Texas Tribune's mission of ensuring that every Texan is empowered with the civic information they need to become full participants in our democracy. The Tribune regularly reports on a broad range of criminal justice issues, including the role that bail and pretrial detention play in the criminal legal system. Tex. Tribune Decl. ¶ 3.

---

Procedure states that a peace officer shall bring the accused before a magistrate, not vice versa. Code of Criminal Procedure Art. 15.17(a).").

[7] This is not necessarily the case in other Texas counties. In Galveston County, for example, a magistrate clerk, a state prosecutor, and a defense attorney representing all arrestees are present at magistration. *Magistrate Court*, County of Galveston, https://perma.cc/H8JB-XYPZ (last visited Sept. 13, 2023). For those arrestees who cannot afford the bail amount that is set, the County provides a review of their case within 12 hours of their initial appearance. *Id.*

The Caldwell/Hays Examiner requires access to magistration so that it can report on newsworthy cases or issues concerning the Caldwell County criminal legal system, including racial disparities in the bail amounts set by the Magistrates, whether the Magistrates are inquiring into arrestees' ability to pay bail, the County's compliance with the Sandra Bland Act and other issues related to detainees' mental health, and the jail population size and demographics. Caldwell/Hays Exam'r Decl. ¶ 5.

Mano Amiga needs access to magistration for many aspects of its work, including to bail people out of jail expeditiously, gather information to advocate for arrestees and victims of crime, support community members from populations that are overrepresented in the criminal legal system, and educate the public on the importance of local courts. Mano Amiga Decl. ¶ 3.

### III. Plaintiffs' efforts to access magistration and Defendants' policy banning access

Defendants have refused numerous requests by Plaintiffs and others to observe magistration in Caldwell County. In November 2021, the Texas Fair Defense Project ("TFDP")—Plaintiffs' Counsel in this matter but acting on its own behalf at the time—requested access from Defendant Mireles' predecessor, then–Justice of the Peace Raymond DeLeon. He refused and stated he had a policy of closing magistration to the public. TFDP again requested access in April 2022, this time from Defendants Kiely, Conley, and Anita DeLeon. Defendant Conley refused outright, and Defendants Kiely and Anita DeLeon failed to respond. TFDP Decl. Ex. 1.

In early June 2022, the Executive Director of Plaintiff Caldwell/Hays Examiner, Jordan Buckley, spoke with County Jail Captain James Short regarding public access to magistration. Captain Short confirmed that all magistration proceedings are closed to the public. Caldwell/Hays Exam'r Decl. ¶ 3. Later that month, TFDP and Plaintiff Mano Amiga wrote to the Caldwell County Magistrates then in office and other county officials explaining the constitutional significance of

public access to criminal court proceedings, requesting that the County rescind its blanket closure of magistration and open all such proceedings to the public, give advance notice of the date and time of magistration proceedings on a public website, provide remote access to those who cannot attend in person, and comply with all constitutional requirements before closing any magistration proceeding. Then–County Court at Law Judge and Chief Magistrate Barbara Molina responded, "[t]he Magistrates of Caldwell County are maintaining the policy banning the public from observing magistration."[8] TFDP Decl. Ex. 3.

Most recently, on March 23, 2023, after a new County Court at Law Judge—Defendant Hicks—and a new Justice of the Peace—Defendant Mireles—took office, Plaintiffs requested that the County rescind its blanket closure policy and open magistration to the public, and asked for a response by April 6. Wilkens Decl. Ex. 1. Defendants did not respond, even after an April 17, 2023 follow-up email stating that Plaintiffs would treat a failure to respond as a refusal. *Id.* Ex. 2.

Argument

## I. Preliminary injunction standard.

To obtain a preliminary injunction, Plaintiffs must show: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th Cir. 2012). Each of these factors weighs strongly in Plaintiffs' favor.

---

[8] Jordan Buckley of the Caldwell/Hays Examiner again sought access to magistration on August 17, 2022, and was informed by a jail sergeant that the public is not permitted to observe magistration at the jail. Caldwell/Hays Exam'r Decl. ¶ 4.

II.    **Plaintiffs are likely to succeed on the merits.**

    A.    **The press and public have a presumptive First Amendment right of access to bail hearings.**

Beginning with *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), the Supreme Court has repeatedly recognized a broad First Amendment right of access to criminal trials and pretrial proceedings. *Id.* (criminal trials); *Globe Newspaper Co.*, 457 U.S. 596 (criminal trials); *Press-Enterprise Co. v. Superior Ct. of Cal.* (*Press-Enterprise I*), 464 U.S. 501 (1984) (jury *voir dire* hearings); *Press-Enterprise Co. v. Superior Ct. of Cal.* (*Press-Enterprise II*), 478 U.S. 1 (1986) (preliminary hearings of the type conducted in California); *El Vocero de P.R. v. Puerto Rico*, 508 U.S. 147 (1993) (per curiam) (preliminary hearings of the type conducted in Puerto Rico). In these cases, the Court has developed a two-part "experience and logic" test to determine whether the press and public have a presumptive First Amendment right of access to the type of proceeding at issue. *See, e.g., Press-Enterprise II*, 478 U.S. at 9.

The experience prong asks, "whether the place and process have historically been open to the press and general public," because a "tradition of accessibility implies the favorable judgment of experience." *Id.* at 8 (internal quotation marks omitted). Courts must look to the history of openness "throughout the United States" rather than in "any one jurisdiction." *El Vocero de P.R.*, 508 U.S. at 150. The logic prong, in turn, asks "whether public access plays a significant positive role in the functioning of the particular process in question," *Press-Enterprise II*, 478 U.S. at 8, and looks to the societal interests that would be served by the openness of the proceeding. *Press-Enterprise I*, 464 U.S. at 508–09. Applying the experience and logic test, "[t]he courts of appeals have . . . recognized a First Amendment right of access to various proceedings within a criminal prosecution," including bail, suppression, due process, entrapment, plea, and sentencing hearings. *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 176 (5th Cir. 2011) (collecting cases).

Of critical importance to this case, every federal circuit court and state supreme court to have addressed the issue—including the Fifth Circuit—has held that the press and public have a First Amendment right of access to bail hearings. *See United States v. Chagra*, 701 F.2d 354, 363–64 (5th Cir. 1983); *Seattle Times Co. v. United States Dist. Ct. for W. Dist. of Wash.*, 845 F.2d 1513, 1517 (9th Cir. 1988); *In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984); *Daily Press, LLC v. Commonwealth*, 878 S.E.2d 390, 398 (Va. 2022); *State v. Williams*, 459 A.2d 641, 650 (N.J. 1983); *United States v. Edwards*, 430 A.2d 1321, 1344 (D.C. 1981) (en banc). These cases concern bail-setting hearings, bail-modification hearings, or both, and draw no distinction between them in applying the experience and logic test and recognizing a First Amendment right of access. *See id.*

In the Fifth Circuit case, *United States v. Chagra*, a federal magistrate closed a bail reduction hearing over the objection of two newspapers, concluding that evidence the government planned to introduce would, if publicized, prejudice the defendant's right to a fair trial. 701 F.2d at 356. On appeal, the Fifth Circuit applied the experience and logic test and held that the press and public have a presumptive First Amendment right of access to bail reduction hearings. *Id.* at 362–64.[9] Addressing the experience prong, the court found that "bail is most often set at the defendant's first appearance before a magistrate or justice of the peace, presumably in open court," but that "this is not always the procedure." *Id.* at 362–63. Turning to the logic prong, the court observed that the openness of bail reduction hearings serves the same societal interests as the openness of criminal trials. *Id.* at 363.[10]

---

[9] Although the Fifth Circuit did not use the term "experience and logic"—the Supreme Court had not yet given the test that name—it applied that test in substance. *Id.*

[10] *Chagra* states in dicta that its recognition of a First Amendment right of access should not be interpreted to extend to "informal bail procedures," such as a "police desk sergeant . . . set[ting] bail." *Chagra*, 701 F.2d at 363–64. The bail hearings held in Caldwell County and across Texas

Although *Chagra* refers to "bail reduction hearings" in recognizing a First Amendment right of access, its reasoning applies in equal measure to all pretrial bail hearings, including bail setting hearings. Indeed, the Fifth Circuit has interpreted *Chagra* as "recogniz[ing] a first amendment right [of] access to *pretrial bail proceedings*." *United States v. Edwards*, 823 F.2d 111, 115 (5th Cir. 1987) (emphasis added). Other federal and state appellate courts have interpreted *Chagra* similarly. *See Seattle Times*, 845 F.2d at 1516; *In re Globe Newspaper*, 729 F.2d at 51; *Daily Press*, 878 S.E.2d at 398. This is unsurprising, because in applying the experience prong, the *Chagra* court analyzed the history of open bail setting hearings, not bail reduction hearings, and in applying the logic prong, the court analyzed the societal interests served by opening bail hearings in general, not bail reduction hearings in particular. *See Chagra*, 701 F.2d at 362–64. In short, the Fifth Circuit treated bail setting hearings and bail reduction hearings as indistinguishable for purposes of the First Amendment right of access. *See id.*

Even if the public's First Amendment right of access to bail setting hearings—including magistration—were an open question, *Chagra*, the other federal and state appellate court decisions referenced above, and the Supreme Court authorities on which they rely provide overwhelming support for recognition of that right. Looking first to the experience prong, there is evidence of the openness of bail hearings dating back to sixteenth century England.[11] In addition, as the Fifth Circuit noted, the "relative importance of pretrial procedure to that of trial has grown immensely in the last two hundred years," and "[b]ail procedures have likewise become more significant."

---

cannot plausibly be characterized as "informal," as the Supreme Court made clear in *Rothgery v. Gillespie County*, 554 U.S. at 203 (holding that an arrestee's initial appearance before a magistrate is the "first formal proceeding" in a criminal prosecution).

[11] Timothy R. Schnacke et al., *Pretrial Justice Inst.*, *The History of Bail and Pretrial Release* 3 (2010), https://perma.cc/22VF-R6FY ("Parliament focused on adding safeguards to the bail process to protect persons from political abuse and local corruption . . . In 1554, Parliament required that the bail bond decision be made in open session.").

*Chagra*, 701 F.2d at 363 (internal quotation marks omitted); *see also Seattle Times*, 845 F.2d at 1516 (adopting *Chagra's* reasoning); *In re Globe Newspaper*, 729 F.2d at 51 (same).

The logic prong strongly supports recognition of a First Amendment right of access to bail setting hearings, including magistration. Determining bail is, without question, "one of major importance to the administration of justice." *In re Globe Newspaper*, 729 F.2d at 52. Bail determinations require careful consideration of a number of factors, including likelihood of flight to avoid prosecution and risk to community safety. *See, e.g.,* Tex. Code Crim. P., Art. 17.15. These decisions have a constitutional dimension, as reflected by the Eighth Amendment's Excessive Bail Clause and the Supreme Court's equal protection and due process jurisprudence. *See, e.g., Bearden v. Georgia*, 461 U.S. 660, 665, 672–73 (1983); *United States v. Salerno*, 481 U.S. 739, 750, 752 (1987). Denying bail or setting bail at an amount the accused cannot afford deprives the presumptively innocent of their liberty pending trial, which can have devastating consequences for them and their families. Pretrial detention, even for a short period, often means loss of a job, the disruption of family life, and other harms to wellbeing. *E.g.*, *Barker v. Wingo*, 407 U.S. 514, 532–33 (1972); *Phila. Bail Fund v. Arraignment Ct. Magistrate Judges*, 440 F. Supp. 3d 415, 424 (E.D. Pa. 2020). Those detained pretrial are also "hindered in [their] ability to gather evidence, contact witnesses, or otherwise prepare [their] defense." *Barker*, 407 U.S. at 533. The Supreme Court's observation about prison sentences applies with even greater force to pretrial detention: "[A]ny amount of actual jail time is significant, and ha[s] exceptionally severe consequences for the incarcerated individual [and] for society which bears the direct and indirect costs of incarceration." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018) (alterations in original; internal quotation marks and citations omitted).

The importance of bail hearings has continued to grow over the past several decades, in large part because "criminal justice today is for the most part a system of pleas, not a system of trials." *Lafler v. Cooper*, 566 U.S. 156, 170 (2012) (noting that "[n]inety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas."). Bail hearings play a critically important role in this "system of pleas," because pretrial detention—and all its attendant negative consequences—provides "a powerful lever of coercive plea bargaining."[12] The increasing significance of bail hearings helps to explain the very strong nationwide trend toward requiring that bail hearings be open to the public. The federal and state court rulings referenced above require open bail hearings across 19 states and the District of Columbia, at least eight more states have added open bail hearing requirements by statute or court rule,[13] and no state has moved to close bail hearings that were once open.

For these reasons, it is beyond dispute that "the same societal interests . . . that mandated a first amendment right of access to criminal trials in *Richmond Newspapers* apply to pretrial criminal proceedings," including bail hearings. *Chagra*, 701 F.2d at 363–64 (internal quotation marks omitted); *see also Seattle Times*, 845 F.2d at 1516; *In re Globe Newspaper*, 729 F.2d at 52; *Daily Press*, 878 S.E.2d at 398; *Williams*, 459 A.2d at 648–50; *Edwards*, 430 A.2d at 1344–45. The openness of bail hearings fosters an informed discussion of governmental affairs by providing the public with a more complete understanding of the judicial system. *See Globe Newspaper*, 457

---

[12] Clark Neily, *Jury Empowerment as an Antidote to Coercive Plea Bargaining*, 31 Fed. Sent. R. 284, 286 (2019); *see also* Paul Heaton et al., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 Stan. L. Rev. 711, 771 (2017) (study of bail practices in Harris County, Texas finding that defendants who are detained pretrial are significantly more likely to plead guilty "for no reason relevant to guilt.").

[13] *E.g.*, Del. R. Crim. P. J.P. Cts. R. 10(b)(1) (1998); Mich. Comp. Laws § 767.37a(3) (1994); Minn. R. Crim. P. 1.05(4)(1)(a) & (10)(1) (2007); Nev. Rev. Stat. § 178.4849 (2021); N.H. R. Crim. P. R. 10 (2015); N.M. R. Crim. P. Magis. Ct. R. 6-109 (2015); Tenn. R. Crim. P. R. 43(e)(2) (2006); Wis. Stat. § 967.08(1) (1988).

U.S. at 604–05. Openness also acts as "an effective restraint on possible abuse of judicial power" by subjecting the hearings "to contemporaneous review in the forum of public opinion." *Richmond Newspapers*, 448 U.S. at 596 (Brennan, J., concurring in the judgment). This is particularly important in bail hearings, where no jury is present. *See Press-Enterprise II*, 478 U.S. at 12–13.

Public access to bail hearings also "fosters an appearance of fairness, thereby heightening public respect for the judicial process," *Globe Newspaper*, 457 U.S. at 606, because "people not actually attending [the hearings] can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known." *Press-Enterprise I*, 464 U.S. at 508 (emphasis in original). Finally, open bail hearings provide "community therapeutic value" by serving as an outlet for concern, hostility, and emotion that can be provoked by crimes, especially violent ones. *Richmond Newspapers*, 448 U.S. at 569–72 (plurality opinion). Thus, "[r]egardless of what the historical practice of openness may have been, the societal interests outlined by the Supreme Court . . . lead to the inexorable conclusion that the First Amendment protects the right to attend and report on bail proceedings." *Phila. Bail Fund*, 440 F. Supp. 3d at 421.

**B.      Defendants cannot overcome the presumptive right of access to bail hearings.**

Any attempt by Defendants to justify their across-the-board closure of magistration will fail. Like other judicial proceedings to which the press and public have a presumptive First Amendment right of access, magistration can be closed only on a case-by-case basis, and only if the magistrate makes specific on-the-record findings that closure is narrowly tailored to serve a compelling interest and that reasonable alternatives to closure would be inadequate to serve that interest. *See Hearst*, 641 F.3d at 181. This case-by-case approach to closure is mandated by the narrow tailoring requirement, because it "ensures that the constitutional right of . . . access . . . will

not be restricted except where necessary to protect the State's interest." *Globe Newspaper*, 457 U.S. at 609. Furthermore, the requirement that the court make specific, on-the-record findings justifying closure "is a procedural safeguard of the First Amendment rights of the press and the public." *United States v. Ahsani*, 76 F.4th 441, 448 (5th Cir. 2023).

Defendants' blanket closure policy is unconstitutional because it is "a *mandatory* closure rule," which prohibits the case-by-case consideration required by the First Amendment. *Globe Newspaper*, 457 U.S. at 608 (emphasis in original).[14] Even if the policy were rescinded and the Caldwell County Magistrates began considering closure case by case, they would have to meet the other constitutional requirements set forth above before closing any specific magistration proceeding.

### C.   Defendants have failed to provide the due process required to protect the First Amendment public right of access.

The Caldwell County Magistrates do not provide the press or public with notice of upcoming magistration proceedings, i.e., the date, time, and location of each proceeding and the names of those to be magistrated. Once magistration is open to the press and public, however, the Magistrates will have to provide this information to comply with the First Amendment right of access. In addition, if a Magistrate "is considering closing a proceeding, [the Magistrate] must generally provide all interested parties—including the public and the press—notice and an

---

[14] In *Globe Newspaper*, the Supreme Court struck down a state law requiring that all trials for sex offenses against minors be closed to the public during the testimony of minor victims. 457 U.S. at 598–602. Although the state had a compelling interest in "safeguarding the physical and psychological well-being of a minor," the Court held that the state's "*mandatory* closure rule" was not narrowly tailored because the state's "interest could be served just as well by requiring the trial court to determine [the necessity of closure] on a case-by-case basis." *Id.* at 607–09 (emphasis in original); *id.* at 611 n.27 ("a mandatory rule, requiring no particularized determinations in individual cases, is unconstitutional").

opportunity to be heard." *Ahsani*, 76 F.4th at 448.[15] Otherwise, a court "cannot properly weigh the First Amendment right of access against the interests served by closure, nor can it fully consider alternatives to closure." *Hearst*, 641 F.3d at 183. Thus, the role of the press and public in ensuring the proper functioning of the judicial system includes not just attending criminal proceedings but also raising objections when courts consider closure.

The Caldwell County Magistrates will have some discretion to decide what form of notice and opportunity to be heard to provide to the press and public. *Ahsani*, 76 F.4th at 448 & n.13; *Hearst,* 641 F.3d at 183–84. They must, however, choose a form of notice and opportunity to be heard that extends to the press and public *generally*, not just those present at magistration, and they must justify the chosen form of notice and opportunity to be heard "under the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 335 [] (1976)." *Ahsani*, 76 F.4th at 448 & n.13 (quoting *Hearst*, 641 F.3d at 183 n.15).

## III.    Plaintiffs will continue to be irreparably harmed absent a preliminary injunction.

Plaintiffs suffer irreparable injury daily—each time the Magistrates conduct an arrestee's magistration behind closed doors. This clearly satisfies the second preliminary injunction factor, because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)); *see Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 380 (5th Cir. 2022) ("We have

---

[15] In *Hearst*, the Fifth Circuit held that the First Amendment right of access to criminal proceedings extends to the press and public *generally*, not just to those who happen to be present in the courtroom when a closure motion is made. 641 F.3d at 181–83. The court explained that "it seems entirely inadequate to leave the vindication of a First Amendment right to the fortuitous presence in the courtroom of a public spirited citizen willing to complain about closure." *Id.* at 183 (internal quotation marks omitted).

recognized that the loss of freedoms guaranteed by the First Amendment . . . constitute[s] per se irreparable harm."); *Hartford Courant Co., LLC v. Carroll*, 986 F.3d 211, 224 (2d Cir. 2021) (same, applied in First Amendment public right of access case). Even if a further showing of irreparable injury were required, Plaintiffs have established that their exclusion from magistration inhibits their ability to pursue their organizational goals. *See supra* at 5-6.

## IV.    The balance of hardships and the public interest strongly favor preliminary injunctive relief.

The two remaining preliminary injunction factors—the balance of the equities and the public interest—strongly favor Plaintiffs. As the Supreme Court and Fifth Circuit have observed, these two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 643 (5th Cir. 2023). "[T]he government's interest *is* the public interest." *Pursuing Am.'s Greatness v. Fed. Election Comm'n,* 831 F.3d 500, 511 (D.C. Cir. 2016) (emphasis in original); *see also Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017). Furthermore, because "[i]njunctions protecting First Amendment freedoms are always in the public interest," *Opulent Life Church*, 697 F.3d at 298 (internal quotation marks omitted), the preliminary injunction Plaintiffs seek is also in Defendants' interest. In short, there are no hardships to balance. *See Hartford Courant*, 986 F.3d at 224.

Defendants will benefit from the injunction not simply because Plaintiffs' First Amendment rights will be protected while the case proceeds, but also because, as noted above, opening magistration to the public will "foster[] an appearance of fairness, thereby heightening public respect for the judicial process." *Globe Newspaper*, 457 U.S. at 606. "[R]eal benefits redound to the judiciary as a governmental institution—the judicial function itself is enhanced— by providing public access to criminal pretrial proceedings." *Williams*, 459 A.2d at 649.

Defendants cannot claim any hardship by arguing that opening magistration to the public may necessitate moving the proceedings to another location such as the county courthouse. Judges cannot avoid the constitutional mandate of public access by choosing to hold proceedings in locations inaccessible to the public. The Caldwell County Magistrates have the authority to determine where to conduct magistration within the County, *see supra* at 4 & n.6, and they must exercise that authority in compliance with the constitution. *See Lilly v. State*, 365 S.W.3d 321, 331–32 (Tex. Crim. App. 2012) (holding bench trial inside prison with "highly restrictive" admittance policies violated defendant's Sixth Amendment right to a public trial); *Purvis v. State*, 708 S.E.2d 283, 283–85 (Ga. 2011) (holding trial inside jail and "totally relinquish[ing] to jail officials the authority to control the public's access" violated defendant's Sixth Amendment public trial right); *Foley v. Commonwealth*, 709 N.E.2d 794, 797 (Mass. 1999) (holding bail hearing inside a jail did not violate defendant's Sixth Amendment public trial right because the space inside the jail accommodated members of the public and was no more difficult to access than a courthouse).[16]

## V.  The Court should waive the security requirement.

In issuing the preliminary injunction, this Court should exercise its discretion to waive the security requirement set forth in Fed. R. Civ. P. 65(c). *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). Waiver is appropriate because Plaintiffs—non-profit organizations with limited resources—have brought this public interest litigation to vindicate constitutional rights. *See City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. Unit B

---

[16] A defendant's Sixth Amendment right to a public trial is "no less protective" of open proceedings than the public's First Amendment right of access, and the constitutional analysis under both is essentially the same. *Waller v. Georgia*, 467 U.S. 39, 46 (1984); *see also Presley v. Georgia*, 558 U.S. 209, 213 (2010) (per curiam).

1981); *Schultz v. Medina Valley Indep. Sch. Dist.*, No. SA-11-CA-422-FB, 2011 WL 13234770, at *2 (W.D. Tex. June 1, 2011) (waiving security requirement "[b]ecause this suit seeks to enforce fundamental constitutional norms"); *Booth v. Galveston Cnty.*, No. 3:18-CV-00104, 2019 WL 4305457, at *2 (S.D. Tex. Sept. 11, 2019) (same).

### Conclusion

For the reasons stated, Plaintiffs respectfully request that the Court enter a preliminary injunction prohibiting Defendants from enforcing their policy of closing magistration proceedings to the press and public, and from closing any arrestee's magistration without first complying with all constitutional requirements, as set forth above.

Dated: September 27, 2023

Respectfully submitted,

/s/ Camilla Hsu
Camilla Hsu (24130207)
Texas Fair Defense Project
314 E. Highland Mall Blvd., Suite 204
Austin, TX 78752
(512) 637-5220 x111
chsu@fairdefense.org

*Counsel for Plaintiffs Mano Amiga and Caldwell/Hays Examiner*

/s/ Julie A. Ford
Julie A. Ford (07240500)
George Brothers Kincaid & Horton, LLP
114 W. 7th Street, Suite 1100
Austin, Texas 78701
(512) 495-1448
Jford@gbkh.com

*Counsel for Plaintiff Texas Tribune*

/s/ Scott Wilkens
Scott Wilkens (*Pro Hac Vice*)
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
scott.wilkens@knightcolumbia.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27 day of September, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and, per Fed. R. Civ. P. 5(b)(2)(E) and prior written consent by the parties, served the foregoing via email to:

J. Eric Magee

Allison, Bass & Magee LLP

1301 Nueces Street, Suite 201

Austin, TX 78701

e.magee@allison-bass.com


Dated: September 27, 2023                              /s/ *Camilla Hsu*
                                                        Camilla Hsu (24130207)
                                                        Texas Fair Defense Project
                                                        314 E. Highland Mall Blvd., Suite 204
                                                        Austin, TX 78752
                                                        (512) 637-5220 x111
                                                        chsu@fairdefense.org

                                                        *Counsel for Plaintiffs Mano Amiga and*
                                                        *Caldwell/Hays Examiner*