IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS TRIBUNE, et al., | § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:23-CV-910-RP |
| CALDWELL COUNTY, TEXAS, et al., | § § § | |
| Defendants. | § § | |

**ORDER**

Before the Court is Plaintiffs Texas Tribune, Mano Amiga, and Caldwell/Hays Examiner's ("Plaintiffs") motion for a preliminary injunction, (Dkt. 16), and Defendants'[1] motion to dismiss, (Dkt. 20). On December 12, 2023, the Court held a hearing on both motions. (Dkt. 26). Having considered the parties' arguments, the evidence presented, and the relevant law, the Court will grant Plaintiffs' motion for preliminary injunction and deny Defendants' motion to dismiss.

**I. BACKGROUND**

Plaintiffs allege they cannot access bail hearings, commonly called magistrations in Texas state court,[2] in Caldwell County because Defendants Caldwell County, the county judge who is the senior magistrate, four justices of the peace who serve as magistrates, and the county sheriff "have adopted a policy of categorically closing all magistration proceedings to the press and public, and the

---

[1] Defendants are Caldwell County, Texas, Trey Hicks, in his official capacity as Caldwell County Court at Law Judge and Caldwell County Magistrate; Matt Kiely, in his official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; Shanna Conley, in her official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; Anita DeLeon, in her official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; Yvette Mireles, in her official capacity as Caldwell County Justice of the Peace and Caldwell County Magistrate; and Mike Lane, in his official capacity as the Sheriff of Caldwell County.

[2] Magistrations are the same or substantially the same as a bail hearing, which generally occurs soon after someone is arrested to determine whether the arrestee will be detained pending trial and, if not, whether the arrestee will need to post bail. For the purposes of this opinion, the Court uses the terms "magistration" and "bail hearing" interchangeably. To the extent Defendants make arguments based on nomenclature, those arguments are not persuasive.

County Sheriff has enforced this blanket closure policy by denying access to all would-be observers" in violation of the First and Fourteenth Amendments. (Compl., Dkt. 1, at 3). Generally, a magistration "combines the Fourth Amendment's required probable-cause determination with the setting of bail, and is the point at which the arrestee is formally apprised of the accusation against him." *Rothgery v. Gillespie County*, 554 U.S. 191, 195 (2008). As the "first formal proceeding against an accused," "where he learns the charge against him and his liberty is subject to restriction," magistration "marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." *Id.* at 203, 213.

Plaintiffs are organizations that seek to access magistrations as part of the press and public's "broad First Amendment right of access to judicial proceedings." (Compl., Dkt. 16, at 7). The Texas Tribune and the Caldwell/Hays Examiner are both nonprofit news organizations that cover topics including criminal justice, prisons, and jails, access to counsel, bail, policing, and mental health services. (*Id.* at 4–5). Mano Amiga, an advocacy organization "that works with communities impacted by the intersection of the criminal legal system and immigration policy," focuses on criminal justice reforms in Caldwell and Hays Counties and has operated a bail fund in Caldwell County since 2020. (*Id.* at 5). Because magistrations "implicate numerous constitutional protections, determine whether the presumptively innocent will be deprived of their liberty pending trial, involve the consideration of weighty questions such as community safety and the risk of flight, and in most cases are the accused's only hearing prior to entering a plea," Plaintiffs allege that access to magistrations serves the same societal interests as access to trials: promoting an informed discussion of governmental affairs, allowing the public to serve as check on the judicial process, fostering the appearance of fairness, and heightening the public's respect for the judicial process. (*Id.* at 15).

**A. Article 15.17: the State Statute Governing Magistration**

In Texas, Article 15.17 of the Texas Code of Criminal Procedure governs magistrations and sets out requirements for what must occur during magistration. Article 15.17 requires a person to be taken before a magistrate within 48 hours of being arrested. Tex. Code Crim. Proc., Art. 15.17(a). During magistration, the magistrate must:

1. Inform arrestees of the accusations against them;
2. Make probable cause determinations;
3. Advise arrestees of their rights, including the right to counsel;
4. Provide arrestees who request appointment of counsel with the indigency affidavit application and ensure they have reasonable assistance completing the application;
5. Make individualized bail determinations based on a number of factors, including the arrestee's ability to pay money bail; and
6. Set cash bonds, personal bonds, and other bond conditions as necessary.

*Id.* "A record of the communication between the arrested person and the magistrate shall be made" and "preserved" for a certain period of time. *Id.*

**B. Magistration in Caldwell County**

In Caldwell County, a person under arrest is magistrated via videoconference by the on-duty magistrate without any other person present—no counsel, family, friends, or press—with the arrestee appearing from the county jail and the magistrate located somewhere else. (Compl., Dkt. 1, at 8). The Sheriff "enforces this blanket closure by maintaining a policy prohibiting access to the jail for the purpose of observing Magistration." (*Id.* at 9). Defendants do not provide the press or public with notice of when magistration will occur or the names of arrestees who will be magistrated. (*Id.* at 9–10). Defendants do not make findings on the record that provide an explanation as to why magistration proceedings are closed to anyone but the arrestee and the magistrate. (*Id.* at 9).

### C. Plaintiffs' Requests to Access Magistrations

Over the last few years, Plaintiffs have sought to access magistrations, and those requests have been denied by Defendants. On June 7, 2022, Jordan Buckley, the executive director of the Caldwell/Hays Examiner, visited the Caldwell County Jail and talked with Captain James Short about access to magistrations. (Compl., Dkt. 1, at 11). Captain Short confirmed that all magistrations are closed to the public. (*Id.*). He showed Buckley the room where magistrations take place on videoconference and said that the room and the adjoining space could be remodeled to allow for open magistrations. (*Id.*). Captain Short also said the County could provide remote access if it used a different type of videoconferencing account. (*Id.*).

A few days later, Mano Amiga wrote to Caldwell County officials, including some Defendants, requesting that the County rescind its blanket closure of magistration, open magistrations to the public, provide online notice of the date and time of magistrations, provide remote access to magistrations, and "comply with all constitutional requirements before closing any magistration proceeding." (*Id.* at 11–12). The county judge at the time responded, "[t]he Magistrates of Caldwell County are maintaining the policy banning the public from observing magistration." (*Id.* at 12). A few months later, Buckley sought access to magistration at the Caldwell County jail. He was informed by a sergeant at the facility that the public is not allowed to access magistrations. (*Id.*).

After Defendant Trey Hicks took office as the new county court at law judge and Defendant Yvette Mireles took office as a new justice of the peace in January 2023, counsel for Plaintiffs wrote to Defendants and county judge Hoppy Haden on March 23, 2023 requesting that they rescind the administrative policy banning the public from observing magistration and open magistrations to the public. Knight First Amendment Institute and Texas Fair Defense Project Letter, Dkt. 16-4, at 5–6). Plaintiffs requested a response by April 6, 2023. (*Id.* at 6). Defendants did not respond. ((Compl., Dkt. 1, at 12). Plaintiffs wrote again on April 17, 2023 and again received no response. (*Id.*).

**D. Procedural Background of This Lawsuit**

Plaintiffs filed suit on August 3, 2023, seeking declaratory and injunctive relief under the First and Fourteenth Amendments plus costs and attorney's fees. (*Id.* at 13–15). Plaintiffs request that the Court declare that "Defendants' blanket closure of magistration proceedings in Caldwell County violates Plaintiffs' First Amendment right of access to judicial proceedings and Plaintiffs' Fourteenth Amendment right to procedural due process." (*Id.* at 15). Plaintiffs also request that the Court require that Defendants "rescind their blanket closure policy and provide the press and public with access to all magistration proceedings, with closure of specific proceedings permitted only if Defendants meet the substantive and procedural requirements of the First and Fourteenth Amendments." (*Id.*).

In late September, Plaintiffs filed their motion for preliminary injunction. (Dkt. 16). Plaintiffs request that the Court enjoin Defendants from enforcing their policy of closing magistrations to the press and public and from closing any specific magistration without first complying with all constitutional requirements. (*Id.* at 23). Defendants did not file a response. The Court ordered Defendants to respond by October 30. (Dkt. 19). On October 30, Defendants filed a combined motion to dismiss and response. (Dkt. 20). Plaintiffs replied in support of their motion for preliminary injunction, (Dkt. 22), and responded to the motion to dismiss, (Dkt. 24). The Court held a hearing on both pending motions on December 12. (Minute Entry, Dkt. 25).

## II. LEGAL STANDARD

**A. Preliminary Injunction**

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

5

that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

**B. Motion to Dismiss**

Defendants filed a motion to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(c). Rule 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

"The standard for a Rule 12(c) motion is the same as the standard used for Rule 12(b)(6) motions." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 454 (5th Cir. 2022). Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina*

6

*Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

## III. DISCUSSION

### A. Preliminary Injunction

#### 1. Plaintiffs Have Shown a Likelihood of Success on the Merits

While the specific question in this case—whether a First Amendment right to access magistrations in Texas exists—may be an issue of first impression, the Supreme Court has long recognized a First Amendment right of access to criminal trials and criminal pretrial proceedings. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980); *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596 (1982); *Press-Enterprise Co. v. Superior Ct. of Cal. (Press-Enterprise I)*, 464 U.S. 501

7

(1984); *Press-Enterprise Co. v. Superior Ct. of Cal. (Press-Enterprise II)*, 478 U.S. 1 (1986); *El Vocero de P.R. v. Puerto Rico*, 508 U.S. 147 (1993) (per curiam). The right of access to criminal trials "rests in part on the fact that 'the criminal trial historically has been open to the press and general public' and in part on the fact that 'public access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government.'" *In re Globe Newspaper Co.*, 729 F.2d 47, 51 (1st Cir. 1984) (quoting *Globe Newspaper Co.*, 457 U.S. at 605–06)).

Courts apply a two-part "experience and logic" test[3] to determine whether the press and public have a presumptive First Amendment right of access to the type of proceeding at issue: "(1) whether the proceeding has historically been open to the public and press; and (2) whether public access plays a significant positive role in the functioning of the particular process in question." *Press–Enterprise II*, 478 U.S. at 8–9. The experience prong asks, "whether the place and process have historically been open to the press and general public," because a "tradition of accessibility implies the favorable judgment of experience." *Id.* at 8. Courts look to the history of openness "throughout the United States" rather than in "any one jurisdiction." *El Vocero de P.R.*, 508 U.S. at 150. The logic prong, in turn, asks "whether public access plays a significant positive role in the functioning of the particular process in question," *Press-Enterprise II*, 478 U.S. at 8, and looks to the societal interests that would be served by the openness of the proceeding, *Press Enterprise I*, 464 U.S. at 508–09.

Applying the experience and logic test, the courts of appeal have "recognized a First Amendment right of access to various proceedings within a criminal prosecution," including bail, suppression, due process, entrapment, plea, and sentencing hearings. *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 176 (5th Cir. 2011) (collecting cases). Critically, in the context of bail hearings, every

---

[3] This Court applies the experience and logic test as it appears to be appropriate given the question before this Court but takes no position on the vitality or usefulness of the test, leaving that analysis to the discretion of higher courts.

court that considered the issue has held that the press and public have a First Amendment right of access to bail hearings. *See, e.g.*, *In re Globe Newspaper Co.*, 729 F.2d 47, 52 (1st Cir. 1984) (holding that Globe Newspaper's interest in access to bail hearings "enlists the First Amendment in its favor" because the "same policy concerns that the Supreme Court identified when it found that the public has a First Amendment right of access to criminal trials—the need for a public educated in the workings of the justice system and for a justice system subjected to the scrutiny of the public— operate in pretrial proceedings"); *Seattle Times Co. v. U.S. Dist. Ct. for W. Dist. of Washington*, 845 F.2d 1513, 1517 (9th Cir. 1988) ("We hold, therefore, that the press and public have a right of access to pretrial release proceedings."); *United States v. Leonardo*, 129 F. Supp. 2d 240, 243 (W.D.N.Y. 2001) (holding that "the public and the press have a First Amendment right of access to bail and detention hearings"); *Philadelphia Bail Fund v. Arraignment Ct. Magistrate Judges*, 440 F. Supp. 3d 415, 421 (E.D. Pa. 2020) ("[W]e have no hesitancy in determining that the right of public access encompasses this significant aspect of the judicial process.").

In *United States v. Chagra*, the Fifth Circuit considered the First Amendment right to access bail reduction hearings and held that the press and public have a presumptive First Amendment right of access to bail reduction hearings. 701 F.2d 354, 363–64 (5th Cir. 1983). The case stemmed from the assassination of United States District Judge John Wood in San Antonio. *Id.* at 355–56. "The press coverage of the murder and its investigation was described by reporters for San Antonio's major newspapers as 'very extensive' and 'intensive.'" *Id.* at 356. Several people were indicted, including El Paso attorney Joseph Chagra whose bail was set at $1,500,000 for the murder with an additional amount for another charge. *Id.* Chagra moved to have bail reduced, and the hearing was held before a magistrate judge. *Id.* During the open hearing, Chagra moved to close it because certain evidence that would be disclosed would prejudice his right to a fair trial. *Id.* The judge closed that portion of the hearing over the objections of local newspapers. *Id.*

9

In its analysis, the Fifth Circuit confirmed that the "first amendment guarantees the public and the press the right to attend criminal trials unless it is demonstrated that some curtailment of that right is required 'to protect defendant's superior right to a fair trial or that some other overriding consideration requires closure.'" *Id.* at 361 (quoting *Richmond Newspapers*, 448 U.S. at 564). Because the First Amendment right to access is rooted in the "societal interests in public awareness of, and its understanding and confidence in, the judicial system," *id.* at 363, and "the same societal interests that mandated a first amendment right of access to criminal trials in *Richmond Newspapers* apply to pretrial criminal proceedings," the Fifth Circuit extended the right to access to bail reduction hearings, *id.* at 363–64.

Applying this well-developed body of law, including the reasoning of *Chagra*, this Court finds that Plaintiffs are likely to show that the press and public have a presumptive First Amendment right to access magistrations in Caldwell County. As to the experience prong, this Court adopts *Chagra*'s reasoning regarding access to bail hearings and bail reduction hearings. Even if bail hearings, nationwide, are not uniformly and historically held in open court and may be informal, they "serve an important purpose." *Id.* at 363. The "relative importance of pretrial procedure to that of trial has grown immensely in the last two hundred years," and "[b]ail procedures have likewise become more significant." *Id.* Following *Chagra*, this Court finds that access to bail hearings "should not be foreclosed because these proceedings lack the history of openness relied on by the *Richmond Newspapers* court" due to their growing importance and great significance to the accused, the victim, and the community. *Id.*

Turning to the logic prong, the determination of bail is "one of major importance to the administration of justice." *In re Globe Newspaper*, 729 F.2d at 52. Bail determinations require important considerations, such as likelihood of flight and risk to community safety, and have a constitutional dimension. In fact, deciding whether a person under arrest shall be detained in jail,

10

even for a short period, is as significant, and arguably much more significant, than the determination made at a bail reduction hearing, which the Fifth Circuit already determined falls within the press and public's First Amendment right to access. During the hearing on Plaintiffs' motion for preliminary injunction, Defendants admitted that "[i]t is a public concern" when a magistrate determines whether to release an arrestee on bond, and, if so, the amount of the bond and the conditions of the bond. (*See* Minute Entry, Dkt. 26; Transcript at 18). As addressed by Plaintiffs, the increasing significance of bail hearings underlies the nationwide trend toward opening bail hearings—and notably there is no trend in the opposite direction to close bail hearing that were once open. (*See* PI Motion, Dkt. 16, at 17).

Open bail hearings foster an informed discussion of criminal justice by providing the public with a more complete understanding of the judiciary system. *See Globe Newspaper*, 457 U.S. at 604–05. Openness also acts as "an effective restraint on possible abuse of judicial power" by subjecting the hearings "to contemporaneous review in the forum of public opinion." *Richmond Newspapers*, 448 U.S. at 596 (Brennan, J., concurring in the judgment). Restraining the possibility of judicial abuse is particularly important in bail hearings, where no jury is present. *See Press-Enterprise II*, 478 U.S. at 12–13. Public access to bail hearings also "fosters an appearance of fairness, thereby heightening public respect for the judicial process," *Globe Newspaper*, 457 U.S. at 606, because "people not actually attending [the hearings] can have confidence that standards of fairness are being observed; the sure knowledge that anyone is free to attend gives assurance that established procedures are being followed and that deviations will become known." *Press-Enterprise I*, 464 U.S. at 508. Open bail hearings also can provide "community therapeutic value" by serving as an outlet for concern, hostility, and emotion that can be provoked by crimes, especially violent ones. *See Richmond Newspapers*, 448 U.S. at 569–72 (plurality opinion). Recognizing the significance of bail hearings and

the positive community effects of open pretrial proceedings, including bail hearings, in criminal cases, the logic prong is easily satisfied.

In Defendants' response to the motion for preliminary injunction, Defendants attempt to distinguish *Chagra* on two bases: (1) the proceeding under scrutiny there was a federal bail reduction hearing, not a state bail hearing or magistration, and (2) *Chagra* did not foreclose informal bail determinations made by state magistrates. (Mot. Dismiss, Dkt. 20, at 10). Defendants' arguments are not persuasive. Both of Defendants' arguments are based on an assumption that *Chagra* already decided the issue before this Court, which is incorrect. *Chagra* held that the press and public can access bail reduction hearings, not initial bail hearings. While *Chagra* did not decide the exact constitutional question here, *Chagra*'s reasoning exactly applies in this case. The fact that the proceeding took place in federal court in *Chagra* and here it takes place in state court does not impact the press and public's First Amendment right of access nor does it alter the reasoning set out by the Supreme Court in *Richmond Newspapers* and the long lines of cases following it. Moreover, Defendants provide no basis for their nonsensical theory that the First Amendment right of access should apply differently to federal courts than state courts.

To the extent Defendants claim that *Chagra* exempted bail hearings from the reach of the First Amendment, Defendants have misinterpreted *Chagra*'s dicta. When the Fifth Circuit noted that "nothing in this opinion should be construed as forbidding . . . informal bail procedures," 701 F.2d at 343, informal bail procedures were not at issue in that case, and this Court is not bound by *Chagra*'s dicta. Even if the statement were not dictum, Defendants seem to mistakenly interpret *Chagra*'s clarification that it was not addressing or *forbidding* informal bail procedures as meaning that the Fifth Circuit *sanctioned* a policy like Caldwell County's to close all bail hearings to the press and public. The Fifth Circuit merely clarified the parameters of its *Chagra* opinion relating to bail reduction hearings and did not hold, or state in dicta, that a county may restrict all access to bail

hearings. Additionally, the format of a bail hearing does not dictate whether constitutional rights attach. For example, in Texas state courts, the right to counsel attaches at magistration—whether the magistration is conducted in a formal or informal proceeding. *See Rothgery v. Gillespie County, Tex.*, 554 U.S. 191, 212–13 (2008); *El Bey v. Dominguez*, 540 F. Supp. 3d 653, 669 (N.D. Tex. 2020) ("In Texas, the right [to counsel] specifically attaches when an accused is brought before a magistrate, as required by state law, for a hearing under Texas Code of Criminal Procedure art. 15.17(a), at which a probable cause determination is made, bail is set, and the defendant is formally apprised of the accusation against him."). The Supreme Court and the Fifth Circuit have attached constitutional rights to bail hearings and bail reduction hearings, and nothing in *Chagra* carved out bail hearings from the reach of the First Amendment.

Nonetheless, the First Amendment right to access bail hearings is not absolute. The right to access is presumptive, and a bail hearing can be closed if a magistrate makes the required findings. The Supreme Court requires a "case-by-case approach" so that "the constitutional right of . . . access . . . will not be restricted except where necessary to protect the State's interest." *Globe Newspaper*, 457 U.S. at 609. "These procedural requirements are essential to safeguarding the First Amendment right of access to sentencing proceedings." *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 182–83 (5th Cir. 2011), as revised (June 9, 2011). Likewise, for bail hearings, magistrates must make a determination to close a bail hearing on a case-by-case basis. For sentencings, for example, the Fifth Circuit has held that courts must provide the press and public with "notice and an opportunity to be heard" before closing the sentencing but acknowledged that the "importance of these requirements, however, does not preclude a trial court from choosing among various options, given the circumstances and interests involved in a particular case, to determine how it will provide notice and an opportunity to be heard." *Id.* As Plaintiffs conceded, Defendants "Caldwell County Magistrates will have some discretion to decide what form of notice and opportunity to be heard to provide to

13

the press and public." (PI Motion, Dkt. 16, at 20). Abiding by those procedural requirements within the 48-hour window between arrest and magistration may present a practical challenge to Defendants. The Court need not decide now the particulars of how the procedural safeguards of notice and an opportunity to be heard should operate in the context of a bail hearing.[4] Rather, the Court trusts that Defendants will soon make reasonable efforts to provide notice and an opportunity to be heard if, on a case-by-case basis, a magistrate intends to close or is asked to close a bail hearing.

### 2. Irreparable Harm

Given that the Court has found that Plaintiffs are likely to succeed on the merits of their First Amendment claim, Plaintiffs suffer irreparable harm due to Caldwell County's blanket policy of closing bail hearings. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 380 (5th Cir. 2022) ("We have recognized that the loss of freedoms guaranteed by the First Amendment . . . constitute[s] per se irreparable harm."). Plaintiffs' likely constitutional deprivation is causing irreparable harm.

Moreover, Plaintiffs have shown that Defendants' policy inhibits their ability to pursue their organizational goals. Sewell Chan, the editor of the Texas Tribune, explains that "[a]ccess to criminal proceedings, including magistration, is fundamental to The Texas Tribune's mission of ensuring that every Texas is empowered with the civic information they need to become full participants in our democracy." (Chan Decl., Dkt. 16-1, at 2). "The Caldwell County magistrates' refusal to allow The Texas Tribune access to magistration proceedings prevents the Tribune from investigating

---

[4] Likewise, the Court does not address Plaintiffs' second claim in their complaint—that Defendants violate the Fourteenth Amendment by failing to provide the press and public with notice and an opportunity to be heard prior to the closure of a magistration—in this order for two reasons: (1) Plaintiffs' arguments in their motion for preliminary injunction center on their First Amendment claim; and (2) while some of the Court's analysis arguably touches on due process, the Court finds that fuller analysis is premature given that Defendants have not yet opened their magistrations.

magistrates' conduct and decision-making during the proceedings and from bringing any issues of concern to the public's attention." (*Id.*). Eric Martinez, Executive and Policy Director of Mano Amiga, describes Defendants' "refusal to allow Mano Amigo access to magistration proceedings" as impeding "many aspects of the organization's work, including bailing people out of jail expeditiously, gathering information to advocate for arrestees and victims of crime, supporting community members from populations that are overrepresented in the criminal legal system, and educating the public on the importance of local courts." (Martinez Decl., Dkt. 16-2, at 2). Finally, Jordan Buckley, the Executive Director of the Caldwell/Hays Examiner, says that the "Caldwell County magistrates' refusal to allow the Caldwell/Hays Examiner access to magistration impedes the Examiner's reporting on newsworthy cases or issues that intersect with its beat in the Caldwell County criminal legal system, including racial disparities in the bail amounts set by the Magistrates, whether the Magistrates are inquiring into arrestee's ability to pay bail, the County's compliance with the Sandra Bland Act and other issues related to detainees' mental health, and the jail population size and demographics." (Buckley Decl., Dkt. 16-3, at 3). Taking Plaintiffs' declarations into account, the Court also finds that Defendants' blanket policy of restricting all access to magistrations is causing irreparable harm to Plaintiffs and their ability to carry out their organizations' goals.

### 3. Balance of the Equities and Public Interest

The remaining two factors—the balance of the equities and public interest—strongly favor a preliminary injunction. The two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "Injunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012) (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)). Since the "government's interest *is* the public interest," *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016), the preliminary injunction is in Defendants' interest. And, given that Defendants'

15

briefing is silent on the issue of hardship, the Court cannot find in their favor. Plaintiffs, on the other hand, point out that open magistrates will "foster[] an appearance of fairness, thereby heightening public respect for the judicial process." *Globe Newspaper*, 457 U.S. at 606. The Court finds that the balance of the equities and the public interest both weigh in favor of granting preliminary injunctive relief.

### 4. Security Requirement

Plaintiffs ask the Court to waive the security requirement because they are nonprofits with limited resources and have asked for injunctive relief to vindicate constitutional rights. Defendants do not express opposition to Plaintiffs' request. Within its discretion, the Court will not require Plaintiffs to post a bond. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) ("[C]ourt may elect to require no security at all.") (quoting *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 303 (5th Cir. 1978)).

### B. Motion to Dismiss Under Rules 12(b)(1) and 12(c)

Rather than file an opposition brief to the motion for preliminary injunction, Defendants filed a combined motion to dismiss and response brief. In it, Defendants argue that Plaintiffs lack standing to bring their claims and do not state viable claims and therefore cannot obtain injunctive relief. The Court turns first to standing. To have Article III standing, a plaintiff must "(1) have suffered an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that will likely be redressed by a favorable decision." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020), as revised (Oct. 30, 2020) (citing *Lujan v. Def's. of Wildlife*, 504 U.S. 555, 560–61 (1992)). In support of their standing argument, Defendants provide an overview of *Chagra* and state that the bail proceeding there did not involve magistration. (Mot. Dismiss, Dkt. 20, at 10–11). Because *Chagra* was about a bail reduction hearing, not a bail setting hearing, Defendants seem to jump to the conclusion that *Chagra* "refute[s] the contentions of Plaintiffs that they have a constitutional right to

participate in such informal proceedings." (*Id.* at 11). Defendants provide no analysis. Regardless, the Court has already addressed *Chagra*, (*see* Section III.A.1.), and adopts its discussion and conclusion that Plaintiffs likely do have a qualified constitutional right to access magistrations based in part on the reasoning in *Chagra*. Because Plaintiffs have shown they likely have a right to access magistrations, Defendants have not shown that Plaintiffs lack standing to bring their claims.

In one paragraph, Defendants unconvincingly argue that Plaintiffs have failed to establish their right to access magistrations and the right to receive notice and have an opportunity to be heard if a magistration is to be closed. Defendants merely repeat that magistrations are not "hearings" or "criminal proceedings" and assert that "Plaintiffs fail to plead facts demonstrating that presentation of an arrestee before the magistrate pursuant to Texas Code of Criminal Procedure, Articles 14.06 and 15.17 requires that the press and public have access to attend." (Mot. Dismiss, Dkt. 20, at 11). Defendants provide no support for their arguments. Because Defendants' arguments are inadequately briefed, the Court need not consider them and will not do so.[5] *See United States v. Green*, 508 F.3d 195, 203 (5th Cir. 2007) (deeming an "assert[ion] in a single sentence at the end of [a party's] opening brief" to be "waived for inadequate briefing"). Defendants missed their deadline to respond to the motion for preliminary injunction, and when prompted by the Court, filed a brief that did not seem intent on persuading the Court not to preliminarily enjoin Defendants but rather to comply with the Court's order to file something.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that:

1. Plaintiffs' motion for preliminary injunction, (Dkt. 16), is **GRANTED**, insofar as the Court will enter the following preliminary injunction: **IT IS ORDERED** that

---

[5] The Court also has considered the merits of Defendants' arguments, to the best of its ability, and declines Defendants' invitation to find that Plaintiffs' complaint fails to state a viable claim for the reasons given in Section III.A.1.

    Defendants are **PRELIMINARILY ENJOINED** from (a) enforcing their policy of closing all magistration proceedings under Article 15.17 to the press and public and (b) from closing any magistration proceeding, except in extraordinary circumstances and as constitutionally permitted, under Article 15.17 without first providing reasonable notice and an opportunity to be heard, as practicable. Recognizing that Defendants may need time to implement open magistrations, the Court **ORDERS** that its preliminary injunction goes into effect on **March 4, 2024**. The Court expects Defendants to open magistrations as soon as possible and fully comply with this preliminary injunction on or before March 4, 2024.

2. Defendants' motion to dismiss, (Dkt. 20), is **DENIED**.
3. Plaintiffs are not required to post a security bond.

**SIGNED** on February 5, 2024.

                                                                      _____
                                                                      ROBERT PITMAN
                                                                       UNITED STATES DISTRICT JUDGE